682 A.2d 315

**In re ADOPTION OF D.M.H.**

**Appeal of K.S.E., Appellant.**

Superior Court of Pennsylvania.

Argued April 18, 1996.

Filed Aug. 9, 1996.

342

Gary G. Efstration, Lancaster, for appellant.

Frank H. Morgan, Jr., Ardmore, for participating parties.

Before KELLY, JOHNSON and OLSZEWSKI, JJ.

KELLY, Judge:

In this appeal, we are requested by appellant, the maternal grandmother, to determine whether the trial court erred by awarding custody of her grandchild, D.M.H., to the adoptive parents rather than to grandmother. Specifically, grandmother asserts that the trial court failed to give sufficient weight to the familial relationship in deciding the best interests of the child. For the following reasons, we hold that the trial court properly considered many factors in making this difficult determination. Accordingly, we affirm the trial court's final decree.

The salient facts and procedural history are as follows. D.M.H. was born on June 7, 1993. His natural parents have

never been married. After the birth, mother and child resided with grandmother until November, 1993. During this five month period, grandmother and mother shared the primary caretaking responsibilities. In November, 1993, mother moved out of grandmother's house for several months and left D.M.H. with grandmother. Despite mother's return to grandmother's house in early 1994, grandmother continued to assume primary caretaking responsibilities. Grandmother was the child's primary caretaker until November 8, 1994, when mother moved out of the house and took D.M.H. with her.

Without informing grandmother, mother consented to the adoption of D.M.H. on November 18, 1994. D.M.H. was placed with Mr. and Mrs. Thomas, the adoptive parents, on December 9, 1994. Grandmother did not find out about the adoption until December 29, 1994. On January 13, 1995, mother signed a revocation for the consent to the adoption, and on January 16, 1995, D.M.H. was returned to the natural mother. Mother, who was not living with grandmother, gave the child to grandmother, who again assumed primary caretaking responsibilities.

On March 22, 1995, mother withdrew her revocation, and the parental rights of both natural parents were terminated by final decree. One day later, D.M.H. was returned to the adoptive parents, where he has remained since that date. On April 3, 1995, grandmother filed a petition to intervene and stay the adoption action. The trial court entered an order on June 5, 1995, granting grandmother's petition to intervene pursuant to *In re Adoption of Hess*, 530 Pa. 218, 608 A.2d 10 (1992).

On October 3, 1995, the Honorable Stanley R. Ott presided over a full hearing before the Orphans' Court of Montgomery County, Pennsylvania. Testimony at trial established the following facts. Throughout the period when grandmother was primary caretaker of D.M.H., grandmother's boyfriend, Mr. Nunn, actively participated in the caretaking responsibilities. The trial court determined that the testimony established *loco parentis* status on the part of Mr. Nunn. Grand-

mother and Mr. Nunn, who planned to marry as soon as grandmother's fourth divorce was finalized, wished to adopt D.M.H. themselves. Grandmother and Mr. Nunn presently live in an apartment together with mother. In an attempt to improve her residential status, grandmother has moved at least five times since D.M.H. was born in June, 1993.

Testimony also established that the adoptive parents have resided in the same home for nine years. They also have a summer home in Wildwood, New Jersey, where they spend the majority of their summers. Additionally, the adoptive parents have a time share in a condominium in Orlando, Florida, where they take a yearly one-week vacation. Mr. and Mrs. Thomas adopted a special needs child, Amanda, more than ten years ago, and by all accounts Amanda has done superbly. Amanda was born with a cleft-palate, and because Mrs. Thomas is a speech therapist, Amanda was placed with the Thomas' in anticipation of her speech therapy needs.

After hearing from all of the interested parties, the trial court found that the best interests of the child would be served by placing D.M.H. with the adoptive parents. This timely appeal followed.

Grandmother raises the following issues for our review:

I. WHETHER THE LOWER COURT COMMITTED AN ABUSE OF DISCRETION BY AWARDING CUSTODY OF [D.M.H.] TO APPELLEES, ROBERT AND KATHY THOMAS, INSTEAD OF MATERNAL GRANDMOTHER, [K.S.E.]?

II. WHETHER THE LOWER COURT IMPROPERLY REFUSED TO ALLOW ANY TESTIMONY REGARDING THE ACTIONS OF THE ADOPTION AGENCY DURING THE PRE–TERMINATION OF PARENTAL RIGHTS PROCESS?

III. WHETHER THE LOWER COURT PLACED UNDUE WEIGHT UPON THE OPINION OF THE CHILD ADVOCATE?

Grandmother's Brief at 4.

Grandmother argues that the trial court committed an abuse of discretion by finding that awarding custody of

D.M.H. to the adoptive parents would better serve the child's best interests. Grandmother further asserts that the trial court improperly precluded testimony regarding the pre-termination of parental rights by the adoption agency and placed undue weight upon the opinion of the child advocate.

■■■ This Court recently stated the standard of review in child custody cases in the following manner:

> It is of course true that our paramount concern in child custody cases is to determine the best interests of the child. *Choplosky v. Choplosky*, 400 Pa.Super. 590, 584 A.2d 340 (1990). Thus, appellate review of child custody Orders is of the broadest type, *McMillen v. McMillen*, 529 Pa. 198, 602 A.2d 845 (1992), and we may modify the trial court's custody determination where it is shown by evidence of record to be manifestly unreasonable, *In re: David L.C.*, 376 Pa.Super. 615, 546 A.2d 694 (1988); *see also Robinson v. Robinson*, 538 Pa. 52, 645 A.2d 836 (1994) (appellant interference warranted where custody Order is manifestly unreasonable). Further, our review is not bound by the trial court's deductions, inferences and interpretations of evidence and we will exercise independent judgment to consider the merits of the case and to enter an Order that is correct and just. *Bucci v. Bucci*, 351 Pa.Super. 457, 506 A.2d 438 (1986).

*In Interest of G.C.*, 449 Pa.Super. 258, 280, 673 A.2d 932, 943 (1996) (*en banc* ); *see also In re Adoption of R.H.*, 485 Pa. 157, 162–63, 401 A.2d 341, 344 (1979); *Matter of Adoption of Christopher P.*, 480 Pa. 79, 86, 389 A.2d 94, 97–98 (1978). Despite this Court's broad standard of review regarding child custody orders, on issues of credibility and weight of the evidence, we must defer to the findings of the trial judge who has had the opportunity to observe the proceedings and the demeanor of the witnesses. *Robinson v. Robinson*, 538 Pa. 52, 57, 645 A.2d 836, 838 (1994) (citing *In re Holtz' Estate*, 422 Pa. 540, 547, 222 A.2d 885, 889 (1966)). Keeping in mind these principles, we will evaluate grandmother's claims.

Grandmother's first issue on appeal claims that the trial court erred in finding that D.M.H.'s best interests would be

served by placing him with the adoptive parents. In particular, grandmother asserts that the trial court abused its discretion by indicating that "there was no significance to the familial relationship and blood connections of [the grandmother and her boyfriend to the child]." (Appellant's Brief at 18).

At the outset, we note that once the parental rights have been terminated, anyone may become an adoptive parent, and the best interest of the child is the controlling factor by which a court must be guided. *In re Adoption of Hess,* 530 Pa. 218, 223–24, 608 A.2d 10, 13 (1992); *Matter of Adoption of Sturgeon,* 300 Pa.Super. 92, 107, 445 A.2d 1314, 1321 (1982) (citation omitted). Furthermore, a trial court must base its conclusions in an adoption case upon all relevant information discerned with the full participation of all interested parties. *In re Adoption of Hess, supra* at 227, 608 A.2d at 15; *Matter of Adoption of Sturgeon, supra* at 110, 445 A.2d at 1323.

Recently, the Supreme Court of Pennsylvania interpreted Section 2701(1) of the Adoption Act[1] to determine the appropriate weight to be given to grandparent/grandchild relationships in adoption cases:

> Thus while the Act does not reflect a preference for a grandparent's adoption, it clearly does not exclude grandparents from being considered as prospective adoptive parents. A grandparent seeking to adopt a grandchild also must indicate his or her relationship to that child in the Petition to Adopt. 23 Pa.C.S. § 2701(1). This requirement indicates that a relationship between the proposed adoptive parent and the adoptee is a relevant consideration.

*In re Adoption of Hess, supra* at 224, 608 A.2d at 13. There is neither a presumption for, nor a presumption against, grandparents who want to adopt their grandchildren. *Id.*

In the instant case, the trial court evaluated a long list of factors "in fashioning a result which is ultimately in [D.M.H.'s] best interests." (N.T. 10/3/95 at 266). One of the many factors that the trial court considered was the weight to

1. 23 Pa.C.S.A. § 2701(1).

be accorded to the familial relationship between grandmother and child. The trial court stated that once parental rights have been terminated, then "the familial relationship, the blood connection, no longer has the significance that it would have otherwise." (*Id.* at 264). The trial court did not say, as grandmother suggests, that the familial relationship is of no significance, but only that it is of reduced significance. Therefore, the trial court properly evaluated the familial relationship between grandmother and child by making the relationship a relevant, but not a controlling, consideration. *See In re Adoption of Hess, supra.*

 Grandmother further proffers that the trial court abused its discretion by overemphasizing the significance of the strained grandmother/mother relationship, and by failing to emphasize D.M.H.'s healthy relationships with his natural cousins and extended family. Grandmother suggests that these natural family relationships counterbalance D.M.H.'s relationship with his adoptive sister. We disagree.

In determining what would be in the best interests of D.M.H., the trial court correctly analyzed the important consideration of parent/family stability. From this broad category, the trial court distilled three important sub-issues: parenting history, marriage history, and sibling relationships.

The trial court did not err by finding the Thomas' ten-year relationship with their previously-adopted special needs child to be a more favorable indication of positive parenting history than the tempestuous and often contentious relationship between grandmother and mother. Similarly, the trial court correctly noted that the Thomas' fifteen-year marriage was a more convincing statement of family stability than grandmother's record of four marriages and four divorces. From the evidence presented at trial, the court also found that an important sibling relationship existed between D.M.H. and his adoptive sister. The trial court further found that there was no such relationship within grandmother's family to counterbalance that sibling relationship. Grandmother asserts that the trial court abused its discretion by not according substan-

tial weight to D.M.H.'s relationship with his cousins. In making this argument, grandmother fails to recognize that a live-in relationship with a direct sibling is far more powerful than occasional or even regular visits with cousins or other similarly distant family members. The trial court did not err by determining that the sibling relationship between D.M.H. and his adoptive sister was a factor which weighed in favor of the Thomases.

Grandmother also claims that the trial court erred by placing any emphasis on the financial disparity between adoptive parents and grandmother. Grandmother argues that because the trial court determined that both families are capable of providing for the needs and welfare of D.M.H., financial disparities should be wholly disregarded.

This Court has stated that in a custody proceeding, the only permissible inquiry into the relative wealth of the parties is whether either party is unable to provide adequately for the child. *Brooks v. Brooks,* 319 Pa.Super. 268, 276–77, 466 A.2d 152, 156 (1983) (citations omitted); *In re Custody of Pearce,* 310 Pa.Super. 254, 258, 456 A.2d 597, 599 (1983) (citations omitted). In the instant case, the trial court determined that both parties are capable of providing for D.M.H.'s needs and welfare and that "finances, by themselves, are no factor whatsoever." (N.T. 10/3/95 at 258). The trial court also noted that although financial disparity is irrelevant to the inquiry of D.M.H.'s best interests, financial stability can sometimes be a slight factor "if the difference is significant and the stability afforded materially affects needs and welfare and/or best interests." (*Id.* at 258–59). The trial court determined that in the instant case, the financial stability issue played only a minor role in the determination of D.M.H.'s best interests. We conclude that the trial court, appropriately, placed only minimal emphasis on the issue of financial stability and that the trial court did not commit an abuse of discretion by doing so.

Grandmother further argues that the trial court erred by failing to cite the Thomas' annual change of address for

vacation purposes as a disruption in D.M.H.'s sense of community stability akin to grandmother's frequent changes in residence. This argument is without merit.

Although it is clear from Mr. Nunn's testimony that his and grandmother's frequent moves are part of a plan to better their lifestyle, the effects of such moves may be destablizing for a young child. If the family residence is frequently relocated, a child may be unable to develop an adequate sense of home and community involvement. Such moves may also deprive a child of the security of knowing that he or she has a permanent place to call his or her own.

The Thomas' annual vacation relocation does not create the same atmosphere of instability for a child. With a vacation home, the child simply becomes a member of two permanent communities. The child remains secure in his or her sense of home and is permanently involved in the same two communities. Furthermore, the child is not hampered by the negative effects which may arise from the insecurity of never having a permanent place to call home. The trial court did not abuse its discretion by finding that the Thomas' have established greater community stability and roots than grandmother.

In her second issue on appeal, grandmother posits that the trial court abused its discretion in refusing to allow testimony regarding the activities of the adoption agency prior to the termination of the parental rights of D.M.H.'s natural parents. Grandmother appears to believe that a fully developed record of the agency's pre-termination activities would be useful to demonstrate how the agency's actions affected the actions of grandmother and the adoptive parents. Specifically, grandmother argues that the adoptive agency owed her a duty to provide notice regarding the proceedings to terminate parental rights. Relying on *Chester County Children and Youth Services v. Cunningham*, 431 Pa.Super. 421, 636 A.2d 1157 (1994), *affirmed*, 540 Pa. 258, 656 A.2d 1346 (1995), grandmother asserts that this lack of notice affected grandmother's position prior to the adoption and was therefore

relevant to the adoption proceedings. We reject such a contention.

Our standard of review is well settled. Questions concerning the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Leonard v. Nichols Homeshield Inc.*, 384 Pa.Super. 1, 5, 557 A.2d 743, 745 (1989); *Lewis v. Pruitt*, 337 Pa.Super. 419, 487 A.2d 16 (1985). Relevance is a threshold consideration in the determination of the admissibility of evidence. *Whyte v. Robinson*, 421 Pa.Super. 33, 38, 617 A.2d 380, 383 (1992); *Majdic v. Cincinnati Machine Co.*, 370 Pa.Super. 611, 618, 537 A.2d 334, 338 (1988). Pennsylvania trial judges enjoy broad discretion regarding the admissibility of potentially misleading and confusing evidence. *Whyte v. Robinson, supra* at 38, 617 A.2d at 383; *Daset Mining Corp. v. Industrial Fuels Corp.*, 326 Pa.Super. 14, 22, 473 A.2d 584, 588 (1984).

*General Equipment Manufacturers v. Westfield Insurance Company*, 430 Pa.Super. 526, 543, 635 A.2d 173, 182 (1993), *allocatur denied*, 537 Pa. 663, 644 A.2d 1200 (1994); *accord Henery v. Shadle*, 443 Pa.Super. 331, 340–41, 661 A.2d 439, 444 (1995) (citations and quotations omitted). Keeping in mind these principles, we now turn to grandmother's argument that the trial court erred in excluding certain testimony at the hearing.

Having specifically outlined the scope of the adoption proceedings, the trial court determined that evidence concerning the agency's pre-termination actions would not assist the court in deciding which family would better serve D.M.H.'s best interests. The trial court directly addressed this issue following an objection to grandmother's line of questioning during the trial as follows:

Whether or not parental rights of the birth mother and/or the birth father were terminated properly or improperly, is not relevant here. They have been terminated. There was no appeal taken. They are final, res judicata, I am not

going to revisit that, nor am I going to engage in second guessing about whether or not they did their job properly in terms of notice.

I don't have any doubt, given the factual history that's taken place in this case that we all agree to, that there are sensitive feelings here on both sides; that there were heavy emotions involved on both sides; that there are strong feelings involved on both sides as to the way things may have been done that lead up to where we now are. I accept that and understand it, and nobody is held accountable for this in my book. My quest, my only inquiry is, now that the parental rights have been terminated, finally—emphasis on the finally—where are the needs and welfare of [D.M.H.] best met, and what is in his best interest?

(N.T. 10/3/95 at 78–79).

The trial court did not err by preventing grandmother from presenting testimony regarding the agency's pre-termination activities. It was within the trial court's discretion to exclude evidence that it determined was irrelevant to the inquiry at hand. Furthermore, the trial court demonstrated proper discretion by noting that the activities of the two parties during the pre-termination period would not be incorporated into the determination of what was in D.M.H.'s best interests.

Grandmother's reliance on *Chester County CYS v. Cunningham, supra,* to demonstrate the relevance of the agency's actions is misplaced. In *Chester County CYS v. Cunningham, supra,* this Court held that the standing afforded to grandparents to intervene in adoption proceedings as enunciated in *In re Adoption of Hess,* 530 Pa. 218, 608 A.2d 10 (1992), does not extend to foster parents. Instantly, having been permitted to intervene in the adoption proceedings, grandmother has already benefitted from the holding in *In re Adoption of Hess, supra.*[2] Grandmother's use of the *Chester County CYS v. Cunningham, supra* interpretation of *In re Adoption of Hess,*

---

**2.** We note that in the case of *In re Adoption of Hess, supra,* our Supreme Court specifically emphasized "that by permitting the grandparents to intervene, we are not guaranteeing that they will prevail." *Id.* at 227, 608 A.2d at 15.

*supra* to prove the relevance of the agency's pre-termination actions is an attempt to stretch the holding of *In re Adoption of Hess, supra* beyond all reasonable bounds. The trial court did not abuse its discretion by refusing to allow testimony regarding the pre-termination actions of the adoption agency.

In grandmother's third issue on appeal, she asserts that the trial court abused its discretion by placing undue weight upon the opinion of a child advocate who had been appointed at the last minute and who had insufficient time to review the case. We deem this issue waived.

It is well settled that issues not raised at trial are waived and cannot be raised for the first time on appeal. *Boyle v. Steiman,* 429 Pa.Super. 1, 10, 631 A.2d 1025, 1030 (1993), *allocatur denied,* 538 Pa. 663, 649 A.2d 666 (1994) (citations omitted); *Larkin v. Metz,* 398 Pa.Super. 235, 243, 580 A.2d 1150, 1154 (1990); Pa.R.A.P. 302(a). Counsel for grandmother never objected to the late appointment of the child advocate and never requested a delay in the proceedings. Also, the child advocate did not request a delay in the proceedings to enable herself to study the record. Grandmother raised no objection to the child advocate's participation in the proceedings. She cannot, therefore, be heard to complain now.

Even if we were to consider grandmother's claim that the trial court erred by placing undue weight on the opinion of the child advocate, this claim would fail. It is the responsibility of the court to consider all relevant evidence in order to assess the best interests of a child whose adoption is pending. *In re Adoption of Hess,* 386 Pa.Super. 301, 309–10, 562 A.2d 1375, 1379 (1989), *affirmed,* 530 Pa. 218, 608 A.2d 10 (1992). The "best interests" standard can only be applied with the full participation of all interested parties during hearings in which all pertinent facts are placed before the court. *Id.* (quoting *Matter of Adoption of Sturgeon, supra* at 110, 445 A.2d at 1323).

The trial court had the duty to consider the statements and opinions of the child advocate while making its

determination of which family would better serve the best interests of D.M.H. From the notes of testimony, it is evident that the trial court incorporated the child advocate's opinions into its decision. It is not evident that the trial court's decision was unduly influenced by the opinions of the child advocate. The trial court indicated the extent of its reliance on the child advocate in the announcement of its decision:

> I agree with much of what [the child advocate] said. I put some emphasis on a few things that she didn't mention, and perhaps I would put a little less on some things she did, but largely what she said, spoke to me.

(N.T. 10/3/95 at 259). In weighing the evidence to determine what is in the best interest of D.M.H., the trial court did not place undue weight on the opinion of the child advocate. Rather, the trial court properly incorporated the opinion of the child advocate into its overall decision.

Based upon the foregoing reasons, we affirm the decree entered on October 4, 1995, in the Montgomery County Court of Common Pleas.

Decree affirmed.