J-A33025-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.J.H.-J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.H., MATERNAL AUNT | : | No. 1950 EDA 2014 |

Appeal from the Order Entered June 13, 2014
in the Court of Common Pleas of Philadelphia County,
Family Court, at No(s): CP-17-AP-0000294-2011

| | | |
|---|---|---|
| IN THE INTEREST OF: A.O.H.-J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.H., MATERNAL AUNT | : | No. 1954 EDA 2014 |

Appeal from the Order Entered June 13, 2014
in the Court of Common Pleas of Philadelphia County,
Family Court, at No(s): CP-17-AP-0000237-2010

BEFORE:    LAZARUS, WECHT, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:                **FILED FEBRUARY 13, 2015**

In these consolidated appeals, C.H., the maternal aunt of S.J.H.-J.

(born in October 2009) and A.O.H.-J. (born in October 2010) (Children,

collectively), appeals from the order of June 13, 2014, which denied her

petition to adopt Children.  We affirm.

The trial court summarized the history of this case as follows.

> On June 11, 2014, a hearing was held on competing
> petitions for adoption.  The parental rights of both natural
> parents have been previously terminated.  [Children] have been
> in the legal care and custody of the Department of Human

---

*Retired Senior Judge assigned to the Superior Court.

> Services ("D.H.S."). [C.H. was the kinship foster parent of Children from April 2011 to April 2012. Thereafter, D.H.S.] placed the children in the physical care and custody of E.J. and T.H.-J. (collectively, [Pre-adoptive Parents]). [Pre-adoptive Parents] filed [petitions] for adoption. [C.H.] also filed petitions for adoption of the same two children. Accordingly, the [trial] court conducted a trial on competing petitions for adoption. On June 13, 2014, the trial court, after a thorough review of the evidence and law, issued its [o]rder granting the petitions for adoption filed by [Pre-adoptive Parents] and denying the adoption petitions filed by [] C.H.

Trial Court Opinion (TCO), 8/7/2014, at 1. Thereafter, C.H. timely filed a notice of appeal and statement of errors complained of on appeal, and the trial court filed its opinion.

C.H. states for this Court's consideration three prolix questions which boil down to the following two claims: (1) the trial court erred in failing to conclude that it was in Children's best interests to be with C.H. because it placed too much emphasis on the superior education and financial resources of Pre-adoptive Parents, and (2) the trial court erred in not allowing the testimony of three of C.H.'s witnesses. C.H.'s Brief at 4-5.

C.H.'s first issue challenges the trial court's determination that it is in the best interest of Children to be adopted by Pre-adoptive Parents.

> [O]nce the parental rights have been terminated, anyone may become an adoptive parent, and the best interest of the child is the controlling factor by which a court must be guided. Furthermore, a trial court must base its conclusions in an adoption case upon all relevant information discerned with the full participation of all interested parties.

- 2 -

*In re Adoption of D.M.H.*, 682 A.2d 315, 319 (Pa. Super. 1996) (citations omitted).  This Court must defer to the trial court on issues of credibility and weight of the evidence; however, "our review is not bound by the trial court's deductions, inferences and interpretations of evidence," and we may modify an order "where it is shown by evidence of record to be manifestly unreasonable."  *Id.* at 318 (quoting *In Interest of G.C.*, 673 A.2d 932, 943 (Pa. Super. 1996) (*en banc*)).

The trial court made the following findings of fact based upon the evidence offered at trial.  Pre-adoptive Parents are a married couple who have had continuous custody of Children since 2012.  TCO, 8/7/2014, at 3.  D.H.S. consented to Children's adoption by Pre-adoptive Parents, with whom Children have a strong bond.  *Id.* at 4.  C.H. has not had significant contact with Children since 2012, and at the time of trial, Children lacked a bond with C.H.  *Id.* at 3-4.  From these facts, the trial court concluded that it was in the best interests of Children to be adopted by Pre-adoptive Parents.

C.H. argues that this conclusion was an error or abuse of discretion, largely because she had bonded with Children when she had custody of Children from April 2011 "until they were summarily removed from her home" in April 2012 "based on an erroneous psychological evaluation[.]"  C.H.'s Brief at 37-38.  C.H. argues that her adoption petitions should have been granted because "the greater extended family clearly supported C.H." and "C.H.'s church and her pastor supported" her.  *Id.* at 39-40.  Although

- 3 -

Children had been in the custody of Pre-adoptive Parents for more than two years, and they had not seen C.H. in months, C.H. argues that "that was not the fault of C.H." *Id.* at 44. Further, C.H. maintains that the trial court erred in considering the fact that Pre-adoptive Parents had "a nice middle class status where both have a job and lived as a married couple" while C.H. was "poor and unmarried." *Id.* at 54.

We are unpersuaded by C.H.'s arguments, which focus on what is best for her, not on what is best for Children. Her position is not that she is a better choice than Pre-adoptive Parents, but rather that she is a competent parent, that Children were bonded to her in the past, and that we should ignore the changes in Children's bonding relationships because they resulted from an erroneous psychological report. Assuming *arguendo* that everything C.H. says about the report is true, the duty of this Court is to decide whether the trial court erred or abused its discretion in determining what is in the best interests of Children, not to right the wrongs which C.H. suffered years ago.

The record is replete with evidence that Pre-adoptive Parents offer Children a stable, loving home, in which Children have thrived. Children refer to Pre-adoptive Parents as "Mommy" and "Dad" and turn to Pre-adoptive Parents for their needs. N.T., 6/11/2014, at 139-146. Phoebe Sutherland, who has provided therapy to Children since their removal from C.H.'s home, described the influence of Pre-adoptive Parents as

"[t]remendously positive" and opined that removing Children from the "really wonderful home" of Pre-adoptive Parents would be detrimental to the well-being of Children. **Id.** at 152, 160. **See also id.** at 160 ("Removing them at this point -- to remove them could potentially be catastrophic to them, given their trauma history."). As summarized by Children's guardian *ad litem*:

> While there may be some contest concerning the adequacy of the competing petitioner, [C.H.], to parent [Children],[1] there is no contest and, in fact, no dispute as to the capabilities and the wonderful environment that has been provided by [Pre-adoptive Parents] over the last two years, which is, essentially, the majority of these young girls' lives.
>
> There is also no dispute that in their care [Children] have thrived. They've bonded with both parents whom they call mom and dad, who they view as their parents. They've bonded with [Pre-adoptive Parents'] [n]atural children. They view them as siblings. And uprooting [Children] from this home at this point and time would prove devastating to them.

**Id.** at 16-17.

Given the evidence before it, the trial court's decision to grant the petition of Pre-adoptive Parents and to deny C.H.'s petition was neither error nor an abuse of discretion. **See Matter of Adoption of Sturgeon**, 445 A.2d 1314, 1323 (Pa. Super. 1982) (affirming trial court's choice between competing adoptive families where the conclusion to keep child in his current

---

[1] In addition to C.H.'s drug conviction in 1999, N.T., 6/11/2014, at 15, other evidence at trial called her parenting skills into question. **See**, **e.g.**, **id.** at 75-77 (C.H. testifying that, of the five natural children she raised, only two graduated from high school, and all grew up to have criminal records).

placement was supported by the record). Accordingly, C.H.'s first issue entitles her to no relief.

C.H.'s remaining issue involves the trial court's limitations upon her calling of witnesses. We consider her arguments mindful of the following.

> Our Rules of Evidence vest the trial court with the authority to determine the admissibility of evidence as well as to control the scope of examination. Rule 403 stresses the importance of clear, concise, and expeditious presentation, allowing for the exclusion of evidence that is confusing, cumulative, or unfairly prejudicial:
>
> **Rule 403. Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time**
>
> Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
>
> In addition, the Rules vest the trial court with the necessary discretion to limit a party's presentation in an effort to achieve a just result while avoiding duplication or waste of time:
>
> **Rule 611. Mode and order of interrogation and presentation**
>
> **(a) Control by court.** The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time and (3) protect witnesses from harassment or undue embarrassment.

Appellate review of the court's rulings under these rules is limited to determining whether the trial judge abused his discretion.

***Rettger v. UPMC Shadyside***, 991 A.2d 915, 925 (Pa. Super. 2010) (citations omitted).

C.H. sought to introduce the testimony of her pastor regarding her observations of C.H.'s interactions with Children during the time they lived with C.H. She also wished to offer the testimony of two representatives of the organization Every Mother is a Working Mother, who would testify to C.H.'s parenting abilities, although they never witnessed C.H.'s interactions with Children. C.H.'s Brief at 51-52.

Regarding the pastor's testimony that she would provide support to C.H. and Children if Children were returned to C.H., counsel for C.H. agreed to introduce that by stipulation. Counsel sought to add the witness's observations of C.H.'s interactions with Children in 2012, but the trial court determined that the relationship in 2012 was irrelevant in 2014. N.T., 6/11/2014, at 71-72. The trial court also disallowed the Every Mother witnesses, stating "I don't find them to be relevant to today's proceedings." ***Id.*** at 124.

Again, C.H.'s focus is on the past. Looking instead at the then-present situation in which Children lived, and what was in their best interests moving forward, we discern no abuse of discretion in the trial court's conclusion that C.H.'s excluded witnesses had nothing to add to the trial. Through her

testimony, as well as the witnesses she did present, live or by stipulation, C.H. was given ample opportunity to present the case for why she was a better choice as a parent in 2014. The excluded testimony she describes would not have altered the analysis or the conclusion that it is in the best interests of Children to remain in the home of Pre-adoptive Parents and to formalize and finalize their relationship. **Accord Artzt v. Artzt**, 556 A.2d 409, 411 (Pa. Super. 1989) ("[A] two-year old record in a custody action is not 'up-to-date' and cannot possibly reflect 'what is currently in the children's best interest.'").

We understand C.H.'s position that she has done all that she could do to maintain her relationships with Children and get them back sooner. She attended scheduled visitations with Children. She attempted to intervene in the dependency action to get Children back, but it was held that she lacked standing to do so. **In re: S.H.J.**, 78 A.3d 1158 (Pa. Super. 2013). Upon losing the standing battle in this Court, C.H. filed her adoption petition, but Children by that time had bonded with Pre-adoptive Parents. Nonetheless, it is the best interests of Children, not of the would-be parent, that must control, and it is clear that the trial court's decision was proper based upon the record before it.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary


Date: 2/13/2015