J-S39013-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INT. OF: J.M., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: S.L. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 997 MDA 2022 |

Appeal from the Decree Entered June 10, 2022
In the Court of Common Pleas of Tioga County
Orphans' Court at No(s): 22 OC 2021

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and NICHOLS, J.

MEMORANDUM BY PANELLA, P.J.:                **FILED:  JANUARY 27, 2023**

This matter involves two competing petitions to adopt J.M. ("Child"), one filed by Child's maternal aunt ("Aunt") and the other filed by Child's foster parents ("Foster Parents"). Although the orphans' court found both petitioners "have the desire and capacity to meet [Child's] needs," the court ultimately concluded it was in Child's best interests to be adopted by Foster Parents. Orphans' Court Opinion, 6/9/22, at 6 (unpaginated). The court therefore entered an order granting Foster Parents' adoption petition and an order denying Aunt's adoption petition. Aunt appealed the latter order, primarily arguing the orphans' court abused its discretion by failing to give sufficient weight to her biological connection to Child. We discern no such abuse of discretion, and we therefore affirm.

The orphans' court summarized the facts leading up to the filing of the adoption petitions, and our review indicates the summary is accurate. We therefore borrow liberally from that summary. Child was born to K.H. ("Mother") and S.M. ("Father") in November 2019. The Tioga County Department of Human Resources ("Agency") became involved with the family in December 2019, and Child was placed with Foster Parents at that time. Meanwhile, Aunt commenced the process to obtain placement of Child in her home in Buffalo, New York, and her home was approved for placement in October 2020.

At the permanency review hearing in December 2020, Mother advised the court she intended to relocate near Aunt's home in New York and requested Child be placed with Aunt. The court granted the request, and Child was transitioned to the physical custody of Aunt in January 2021. Mother relocated to New York, but returned to Pennsylvania just several weeks later. Mother filed a motion seeking the return of Child to Foster Parents in Pennsylvania. The court granted this motion on March 13, 2021, and Child was returned to the physical custody of Foster Parents. She has remained in Foster Parents' care since that time. Aunt retained partial physical custody of Child for one weekend every month.

In May 2021, Mother and Father each signed a consent for adoption of Child, and both of their parental rights to Child were subsequently terminated. Foster Parents filed their petition to adopt Child on August 10, 2021, and

Aunt's petition seeking to do the same followed two days later. The Agency filed a report of intermediary and consented to the adoption of Child by Foster Parents. The orphans' court held a two-day consolidated hearing on the adoption petitions, and ultimately granted Foster Parents' petition to adopt Child and denied Aunt's petition. Aunt filed a timely notice of appeal, and both she and the orphans' court complied with Pa.R.A.P. 1925. Aunt raises the following issue for our consideration:

> Did the trial court err and abuse its discretion in finding that it was in the best interests of the child to be adopted by a non-relative foster parent rather than her maternal aunt with whom she had a bond and ongoing involvement, and against the recommendation of the Guardian *Ad Litem* and Legal Interest Attorney?

Appellant's Brief at 7.

We review an orphans' court decision regarding the adoption of a child for an abuse of discretion. **See In re K.D.**, 144 A.3d 145, 151 (Pa. Super. 2016). In cases that could be deemed a "close call," it is especially critical to be mindful of the contours of that standard. The mere fact that this Court may have reached a conclusion different from the one reached by the orphans' court does not amount to an abuse of discretion. **See id.** Rather, an abuse of discretion only exists if the orphans' court misapplied the law, or the record shows the orphans' court's judgment was manifestly unreasonable or the product of partiality, prejudice, bias or ill-will. **See id.**

As all parties agree, and the orphans' court made clear, the paramount concern of an adoption proceeding is the best interests of the child involved.

*See id.* This requires the court to look at "all factors that bear on the child's physical, emotional, intellectual, moral and spiritual well-being." *Id.* at 153 (citation omitted). It also means the court "may examine a variety of matters[,] including, but not limited to, any specific needs of the child, sibling relationships, [and] the proposed adoptive family." Orphans' Court Opinion, 6/9/22, at 3 (unpaginated). *See also In re Adoption of D.M.H*., 682 A.2d 315, 319 (Pa. Super. 1996) (stating factors relevant to best interests standard in adoption proceedings include parenting and marriage stability of proposed adoptive family and sibling relationships).

Here, in finding it was in the best interests of Child to allow Foster Parents to adopt Child, the orphans' court highlighted that Child deserves permanency and has spent the "vast majority" of her young life with Foster Parents. Orphans' Court Opinion, 6/9/22, at 3 (unpaginated). The orphans' court acknowledged the relationship Aunt has with Child, and the connection Child has made with Aunt's children, along with the ability Child has at times to visit her older half-sibling living with Aunt's and Mother's sister. *See id.* at 4 (unpaginated). However, the court noted Child was clearly bonded to Foster Parents, and called them "mom" and "dad." *See id.* The court added Child has also bonded with her younger biological sibling, who has already been adopted by Foster Parents, as well as with Foster Parents' older daughter. *See id.*

The orphans' court pointed out that Foster Parents are immediately willing and able to finalize the adoption of Child, as all approvals have been

completed. In contrast, the trial court noted, Aunt would still need additional approval to adopt child by the state of New York, which would "result in additional delay in permanency and prolong confusion for [Child], neither of which are in her best interest." *Id.* at 5 (unpaginated).

The orphans' court also credited and gave "substantial weight" to the testimony of Dr. Denise Feger, who testified at the hearing as an expert on attachment and bonding and who had conducted a bonding assessment on behalf of Foster Parents. *Id.* The court stated:

> Dr. Feger testified that [Child] appears to have a secure attachment with [Foster Parents], that she is meeting her developmental expectations and responds appropriately during interactions. Further, [Child] recognizes [Foster Parents] as her primary caregivers and relies upon them for support.
>
> Dr. Feger noted that [Child] is at a critical age for forming attachments and separation from [Foster Parents] would be a significant loss, perhaps comparable to a death. A removal from [Foster Parents'] home would require clinical intervention to address the loss [Child] would experience and [to] support healthy attachment[s] in another home. This Court finds this evidence to be significant in evaluating the best interests of [Child] and finds it weighs heavily in favor of [Child's] adoption by [Foster Parents].

*Id.* (paragraphs and paragraph indentations added).

Aunt takes issue with the court's reliance on Dr. Feger's testimony because, according to Aunt, the foster mother "went to significant lengths to influence the bonding evaluation." Appellant's Brief at 13. However, Aunt's assertions essentially challenge the court's credibility determinations and the weight it chose to give to Dr. Feger's testimony. Of course, the credibility and weight to be assigned to that testimony was for the orphans' court to decide

- 5 -

as the fact-finder. *See In re Adoption of K.M.G.*, 219 A.3d 662, 670 (Pa. Super. 2019).

Aunt's primary complaint with the orphans' court decision is that it failed to place sufficient weight on the fact that she is biologically related to Child and Foster Parents are not. As the orphans' court noted in rejecting this claim, however, the existence of a blood relationship is a relevant factor when evaluating an adoption petition, but it is not a controlling one. *See* Orphans' Court Pa.R.A.P. 1925(a) Opinion, 8/1/22, at 1 (*citing In re Adoption of D.M.H.*, 682 A.2d at 319). In fact, the orphans' court explained, it is an abuse of discretion for an orphans' court to rely exclusively on the biological nature of a relationship when considering an adoption petition, rather than relying on the whole record to determine what is in the best interests of the child. *See* Orphans' Court Pa.R.A.P. 1925(a) Opinion, 8/1/22, at 1 (*citing In re K.D.*, 144 A.3d at 152).

The orphans' court specifically confirmed that, here, it had considered the biological relationship between Child and Aunt when making its decision. *See* Orphans' Court Pa.R.A.P. 1925(a) Opinion, 8/1/22, at 1 (unpaginated). At the same time, the court explained it had also considered the fact that Child had a biological connection to her younger sibling, who has already been adopted by Foster Parents and with whom Child would live if also adopted by Foster Parents. *See id.* The court acknowledged Child's half-sibling was in the care of Aunt's and Mother's sister. However, the court found that, even if it

were to grant Aunt's adoption petition, Child's opportunity to see her half-sibling would be limited because the sister lives over two hours away from Aunt. **See** Orphans' Court Opinion, 6/9/22, at 4 (unpaginated).

Based on the above, it is clear the orphans' court considered Child's biological connections as a relevant but not controlling factor. The court then determined, based on the entire record and the multiple factors outlined above, that the best interests of Child would be served by granting Foster Parents' adoption petition. Contrary to what Aunt suggests, the orphans' court's evaluation comported with our case law, **see In re Adoption of D.M.H.**, 682 A.2d at 319); **In re K.D.**, 144 A.3d at 152, and did not represent an abuse of discretion.

Aunt also asserts the orphans' court abused its discretion by failing to follow the recommendations of the guardian *ad litem* ("GAL") and Legal Interest Attorney ("LIA"), with both attorneys ultimately recommending the court grant Aunt's adoption petition.[1] This claim fails.

In the first place, Aunt does not meaningfully develop her claim or offer any analysis to support her bald assertion. The claim is waived for that reason.

---

[1] The GAL testified at the hearing that he was "torn" on what the best interests of Child were given "there is bonding between [Aunt and Child] and a bonding between [Foster Parents and Child]." N.T., 4/22/22, at 131. In the opinion of the GAL, "it could go either way." **Id.** However, in the GAL's subsequent findings of fact and conclusions of law, the GAL recommended that Aunt's adoption petition be granted.

*See Commonwealth v. Love*, 896 A.2d 1276, 1287 (Pa. Super. 2006) (stating that arguments that are not sufficiently developed are waived).

Even if not waived, the claim would offer Aunt no basis for relief. Aunt does not cite any case law in support of her claim, much less any case which obligates an orphans' court to follow the recommendations of either the GAL or the LIA. In fact, as Foster Parents point out, this Court has found it is an abuse of discretion for a court to solicit advice on rulings from a GAL and rely too heavily on the GAL's recommendations so as to give the improper appearance that the GAL is doing the court's job. *See C.W. v. K.A.W.*, 774 A.2d 745, 750 (Pa. Super. 2001).

Still, the orphans' court made clear that just because it did not accept the recommendations of the GAL and the LIA, that did not mean the court had failed to fulfill its duty to consider the recommendations. *See In re Adoption of D.M.H.*, 682 A.2d at 322 (stating that the orphans' court has the duty to consider the opinions of the GAL while making its own determination of which adoptive family would better serve a child's best interests). To the contrary, the court specifically reiterated it had considered the positions of both the GAL and the LIA. *See* Orphans' Court Pa.R.A.P. 1925(a) Opinion, 8/1/22, at 2 (unpaginated). The court stressed that neither the GAL nor the LIA ever argued Foster Parents were unfit or their home inappropriate for Child. The court stated it then considered the positions of the GAL and the LIA in conjunction with all of the other evidence and arguments, along with the

applicable law, and made its determination that it was in the best interests of Child to grant the adoption petition of Foster Parents. ***See id.*** at 3 (unpaginated). Again, we can discern no abuse of discretion in the orphans' court's decision and for that reason, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/27/2023