J-S28016-15; J-S28017-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: J.Z. AND M.Z., MINORS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.H., MOTHER | No. 2126 MDA 2014 |

Appeal from the Order entered December 4, 2014,
in the Court of Common Pleas of Lancaster County, Juvenile
Division, at No(s): CP-36-DP-000028-2013, CP-36-DP-000185-2012

| | |
|---|---|
| IN THE INTEREST OF: J.Z. AND M.Z., MINORS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.Z., FATHER | No. 2175 MDA 2014 |

Appeal from the Order entered December 4, 2014,
in the Court of Common Pleas of Lancaster County, Orphans'
Court, at No(s): CP-36-DP-0000028-2013,
CP-36-DP-0000185-2012

BEFORE: BOWES, ALLEN, and LAZARUS, JJ.

MEMORANDUM BY ALLEN, J.: **FILED MAY 27, 2015**

J.H. ("Mother") and M.Z. ("Father") appeal from the orders entered on December 4, 2014, adjudicating M.Z. (born in February of 2013) and J.Z. (born in June of 2010) (collectively "the Children") dependent, and changing the Children's goal to adoption. We affirm.

The trial court accurately detailed the factual background and procedural history of this case as follows:

> [Lancaster County Children and Youth Social Service Agency ("CYS")] has a history with this family dating back to 2010. In November of 2012, [CYS] obtained legal custody of [J.Z.], due to ongoing concerns about [Mother and Father's] lack

of housing, domestic violence, and drug use. A Family Service Plan [("FSP")] was approved by the [trial court] for Mother and Father. Mother gave birth to [M.Z.] on February 11, 2013. [CYS] filed for physical custody of [the Children] on February 12, 2013, because of continuing issues and a lack of cooperation on the part of both parents, in completing their FSP. The [trial court] transferred physical custody of [J.Z.], and physical and legal custody of [M.Z.] to [CYS] at adjudication and disposition hearings on March 19, 2013. At the time of the hearing, the [trial court] approved Child Permanency Plans, which included mental health, drug and alcohol, parenting, financial stability, housing, and commitment goals for Mother. The Child Permanency Plans included mental health, drug and alcohol, crime free, parenting, financial stability, housing, and commitment goals for Father. These goals mirror those set forth in the 2012 FSP.

Mother gave birth to a third child, [A.Z.], on March 29, 2014. Father was the father of this child. On April 2, 2014, [CYS] received custody of [A.Z.], after Mother dropped him off at a safe haven. Both Mother and Father signed Consents to Adoption for [A.Z.], and their parental rights have since been terminated. [A.Z.] was placed in the resource home that was caring for [the Children] at that time.

Legal and physical custody of [the Children] was returned to Mother on June 13, 2014, after being in [CYS] care for approximately 16 months. Mother had substantially completed her Child Permanency Plan. She was living with her mother, [D.K., ("Maternal Grandmother")], and had completed her mental health evaluation and drug and alcohol evaluation, which indicated that no treatment was necessary. The [trial court] determined that [M]aternal [G]randmother had sufficient income to pay for housing and the children's needs. Mother also received SNAP benefits. A voluntary FSP was put into place.

At the time that [the Children] were returned to Mother's care, Father had not completed either the 2012 FSP or the 2013 Child Permanency Plan. Father did complete his mental health evaluation, but he had failed to follow through with the recommended treatment. [Church of the Brethren Youth Services ("COBYS")] supervisor testified that caseworker Courtney Farr told both Mother and Father that Father was not to reside in the household or have unsupervised contact with the

- 2 -

[C]hildren, as he did not complete his Child Permanency Plan. The [CYS] caseworker also testified that Mother knew Father was not to reside in the home.

[J.Z.] has been diagnosed with cerebral palsy and requires occupational and physical therapy. After the [C]hildren were returned to Mother's care, [CYS] continued to receive reports about ongoing concerns in the home. [CYS] received reports that [J.Z.] was missing her occupational and physical therapy appointments. It was also reported that Father was residing in the home, and that [J.Z.] was hit by a rock thrown by Father.

Trial Court Opinion, 1/12/15, at 1-6 (footnotes and citations omitted).

On November 4, 2014, CYS filed a petition for temporary custody, and the Children were placed in the physical custody of CYS. On November 18, 2014, an adjudication and disposition hearing was held in the dependency proceedings. At the hearing, Officer J. Hatfield, a Lancaster City police officer; Bartlet Wilbert, J.Z.'s occupational therapist; Sarah Crowther, J.Z.'s physical therapist; Ashley Sullivan, a CYS caseworker; Nicole Lazarus[1], a supervisor at COBYS; Maternal Grandmother; and Mother testified. On December 4, 2014, the trial court adjudicated the Children dependent and ordered that the Children's placement goal be adoption.

On December 15, 2014, Mother filed a notice of appeal and concise statement of errors on appeal. Father subsequently filed a notice of appeal and concise statement of errors on appeal on December 18, 2014.[2] This

_____

[1] Ms. Lazarus is no relation to this panel's Superior Court Judge Lazarus.

[2] Mother filed a notice of appeal from the separate orders entered on December 4, 2014 adjudicating the Children dependent and placing them in foster care. Father filed a notice of appeal from the same orders. Mother

J-S28016-15

Court *sua sponte* consolidated Mother and Father's appeals. Mother raises the following issues on appeal:

> A. Whether the [trial court] erred by not providing visitation to Mother and approved the Child Permanency Plan without goals for reunification with Mother?
>
> B. Whether it was in error to accept testimony when [CYS] failed to provide Notice of [CYS] witnesses, in violation of Rule 1340(B)(1) of the Rules of Juvenile Procedure?
>
> C. Whether the Court erred in not swearing the child in when eliciting testimony from her?
>
> D. Whether the Court erred by relying on testimony of an unsworn four-year old, whose testimony was in direct opposition to testimony from Mother and Maternal Grandmother, and whom [sic] missed her prior foster parents?
>
> E. Whether the [trial court] erred by relying on testimony from the caseworker that stated Mother was told Father could not live with her when Mother had legal custody of the [C]hildren and there was no order prohibiting Mother to parent as she sees appropriate?

---

and Father each filed a single notice of appeal from the two separate adjudications of dependency and disposition as to each child. In **General Electric Credit Corp. v. Aetna Casualty and Surety Co.**, 263 A.2d 448, 452 (Pa. 1970), the Pennsylvania Supreme Court stated that "taking one appeal from several judgments is not acceptable practice and is discouraged." In **Commonwealth v. C.M.K.**, 932 A.2d 111 (Pa. Super. 2007), a panel of this Court quashed a joint notice of appeal filed by co-defendants from separate judgments of sentence, **citing General Electric, supra** and **Pa.R.A.P. 512, Note. See also TCPF Limited Partnership v. Skatell**, 976 A.2d 571, 574 n.2 (Pa. Super. 2009) (noting that taking one appeal from several orders is not acceptable practice and is discouraged, but declining to quash the appeal where appellant filed an amended appeal). Mother and Father improperly filed only a single notice of appeal from both orders. However, in order to preserve judicial economy in our Children's Fast Track cases, we will address Mother and Father's appeals.

F. Whether the [trial court] erred by not holding the Adjudication hearing with ten (10) days of the Shelter care hearing, in violation of Pa.R.J.P. 1404(A)?

G. Whether the [trial court] erred by basing his decision to deny visitation and deny a Plan for Reunification upon Mother and Father's "relationship"?

Mother's Brief at 9.

Father raises the following issues on appeal:

I. Did the trial court err by failing to hold the adjudication hearing within ten (10) days of the shelter care hearing, in violation of Rule 1404 of the Rules of Juvenile Procedure?

II. Did the trial court err in accepting testimony from witnesses when the Agency failed to provide a Notice of Agency Witnesses, in violation of Rule 1340(B)(1) of the Rules of Juvenile Procedure?

III. Did the trial court err by eliciting testimony from the child without placing the child under oath or soliciting testimony concerning the competency of the child to testify?

IV. Did the trial court err by finding [CYS] met its burden of proof to find the children dependent, remove the children from the Mother's home, deny visitation to both parents, and fail to provide either parent a plan for reunification with the [C]hildren?

a. Did the trial court err by finding the Agency met its burden to find the [C]hildren dependent when Father and Mother exercised appropriate parental care and control over the [C]hildren?

b. Did the trial court err by finding the Agency met its burden by showing it was clearly necessary to remove the [C]hildren from Mother's home when there were feasible alternatives available to the Agency?

Father's Brief at 5.

- 5 -

We address the issues raised by Mother and Father together, as they are interrelated. Mother and Father challenge the adjudications of dependency with regard to the Children. Additionally, Mother and Father argue that their due process rights under both the United States and Pennsylvania Constitutions have been violated.

Mother and Father challenge the trial court's orders adjudicating the Children dependent. Mother and Father argue that the trial court erred by finding the Children dependent, removing the Children from Mother' home, denying visitation to both parents, and failing to provide either parent with plans for reunification with the Children. Further, Mother argues that the trial court erred by relying on testimony from the caseworker that stated Mother was told Father could not live with her when Mother had legal custody of the Children and there was no order prohibiting Mother from parenting.

Our Supreme Court set forth our standard of review for dependency cases as follows:

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

In a change of goal proceeding, the best interests of the child, and not the interests of the parent, must guide the trial court, and the parent's rights

- 6 -

are secondary. *In re A.K.*, 936 A.2d 528, 532-533 (Pa. Super. 2007). The burden is on the Agency to prove the change in goal would be in the child's best interests. *In the Interest of M.B.*, 674 A.2d 702, 704 (Pa. Super. 1996) (citing *In Interest of Sweeney*, 574 A.2d 690, 691 (Pa. Super. 1990). In contrast, in a termination of parental rights proceeding, the focus is on the conduct of the parents under 23 Pa.C.S.A. § 2511. *In re M.B.*, 674 A.2d at 705.

Section 6302 of the Juvenile Act defines a "dependent child" as a child who:

> (1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. **A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk[.]**

42 Pa.C.S.A. § 6302(1) (emphasis added).

In *In re G., T.*, 845 A.2d 870 (Pa. Super. 2004), this Court clarified the definition of "dependent child" further:

> The question of whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available.

*Id.* at 872 (internal quotations and citations omitted); *see also In re J.C.*, 5 A.3d 284, 289 (Pa. Super. 2010). Additionally, we note that "[t]he burden

of proof in a dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency." *G., T.*, 845 A.2d at 872.

With regard to a dependent child, in *In re D.A.*, 801 A.2d 614 (Pa. Super. 2002) (*en banc*), this Court explained:

> [A] court is empowered by 42 Pa.C.S. § 6341(a) and (c) to make a finding that a child is dependent if the child meets the statutory definition by clear and convincing evidence. If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or public agency, or transferring custody to the juvenile court of another state. 42 Pa.C.S. § 6351(a).

*Id.* at 617.

Regarding the disposition of a dependent child, section 6351(e), (f), (f.1), and (g) of the Juvenile Act provides the trial court with the criteria for its permanency plan for the subject child. Pursuant to those subsections of the Juvenile Act, the trial court is to determine the disposition that is best suited to the safety, protection and physical, mental and moral welfare of the child.

Section 6351(e) of the Juvenile Act provides in pertinent part:

> **(e) Permanency hearings.—**
>
> (1) [t]he court shall conduct a permanency hearing for the purpose of determining or reviewing the permanency plan of the child, the date by which the goal of permanency for the child might be achieved and whether placement continues to be best suited to the safety,

- 8 -

protection and physical, mental and moral welfare of the child.  In any permanency hearing held with respect to the child, the court shall consult with the child regarding the child's permanency plan in a manner appropriate to the child's age and maturity. . . .

(2) If the county agency or the child's attorney alleges the existence of aggravated circumstances and the court determines that the child has been adjudicated dependent, the court shall then determine if aggravated circumstances exist.  If the court finds from clear and convincing evidence that aggravated circumstances exist, the court shall determine whether or not reasonable efforts to prevent or eliminate the need for removing the child from the child's parent, guardian or custodian or to preserve and reunify the family shall be made or continue to be made and schedule a hearing as provided in paragraph (3).

42 Pa.C.S.A. § 6351(e).

Section 6351(f) of the Juvenile Act prescribes the pertinent inquiry for

the reviewing court:

**(f) Matters to be determined at permanency hearing.-**

At each permanency hearing, a court shall determine all of the following:

(1)  The continuing necessity for and appropriateness of the placement.

(2)  The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

(3)  The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4)  The appropriateness and feasibility of the current placement goal for the child.

(5) The likely date by which the placement goal for the child might be achieved.

(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.

(6) Whether the child is safe.

(7) If the child has been placed outside the Commonwealth, whether the placement continues to be best suited to the safety, protection and physical, mental and moral welfare of the child.

* * *

(9) If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child unless:

> (i) the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child;
>
> (ii) the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or
>
> (iii) the child's family has not been provided with necessary services to achieve the safe return to the child's parent, guardian or custodian within the time frames set forth in the permanency plan.

* * *

**(f.1) Additional determination. —** Based upon the determinations made under subsection (f) and all relevant

evidence presented at the hearing, the court shall determine one of the following:

(1) If and when the child will be returned to the child's parent, guardian or custodian in cases where the return of the child is best suited to the safety, protection and physical, mental and moral welfare of the child.

(2) If and when the child will be placed for adoption, and the county agency will file for termination of parental rights in cases where return to the child's parent, guardian or custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

(3) If and when the child will be placed with a legal custodian in cases where return to the child's parent, guardian or custodian or being placed for adoption is not best suited to the safety, protection and physical, mental and moral welfare of the child.

(4)  If and when the child will be placed with a fit and willing relative in cases where return to the child's parent, guardian or custodian, being placed for adoption or being placed with a legal custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

(5) If and when the child will be placed in another living arrangement intended to be permanent in nature which is approved by the court in cases where the county agency has documented a compelling reason that it would not be best suited to the safety, protection and physical, mental and moral welfare of the child to be returned to the child's parent, guardian or custodian, to be placed for adoption, to be placed with a legal custodian or to be placed with a fit and wiling relative.

**(f.2) Evidence. –** Evidence of conduct by the parent that places the health, safety or welfare of the child at risk, including evidence of the use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk, shall be presented to the court by the county agency or any other party

at any disposition or permanency hearing whether or not the conduct was the basis for the determination of dependency.

**(g) Court order.—** On the basis of the determination made under subsection (f.1), the court shall order the continuation, modification or termination of placement or other disposition which is best suited to the safety, protection and physical, mental and moral welfare of the child.

42 Pa.C.S.A. § 6351.

Finally, the court should consider the bond between the child and his parents, foster parents, and siblings. *In re H.V.*, 37 A.3d 588, 594-595 (Pa. Super. 2012).

This Court has stated:

[T]he focus of all dependency proceedings, including change of goal proceedings, must be on the safety, permanency, and well-being of the child. The best interests of the child take precedence over all other considerations, including the conduct and the rights of the parent. . . . [W]hile parental progress toward completion of a permanency plan is an important factor, it is not to be elevated to determinative status, to the exclusion of all other factors.

*In re A.K.*, 936 A.2d 528, 534 (Pa. Super. 2007). For example, in *In re N.C.*, 909 A.2d 818, 823 (Pa. Super. 2006), the trial court granted a goal change to adoption despite the fact that the mother had made substantial progress toward completing her permanency plan.

Here, the trial court found that the Children were in CYS's custody for sixteen months, and that Mother and Father had an opportunity to reunify with Children. Trial Court Opinion, 1/12/15, at 11. The trial court further found that CYS presented clear and convincing evidence that the Children

- 12 -

were without proper parental care and control necessary for their physical, mental, and emotional health and welfare, and were therefore dependent children under the Juvenile Act. *Id.* at 10. The trial court also found that Mother and Father did not follow the trial court's order that Father was permitted visits with the Children only if they were supervised. *Id.* at 9.

While Mother and Father argue that the trial court solely based its decision to adjudicate the Children dependent on Mother and Father's relationship, the trial court stated that Mother and Father's relationship alone was not responsible:

> After being returned to Mother's legal and physical custody under a voluntary [FSP], Mother did not cooperate with the Agency's efforts to verify the safety of the children in the home. [J.Z.] was missing occupational and physical therapy appointments. [J.Z.]'s home exercise regimen was not being followed. Concerns were raised about [Mother's] possible drug usage and she did, on one occasion, test positive for Oxycontin. Maternal grandmother, who was assisting with all of the household bills and expenses, moved out. [J.Z.] was struck by a rock, reportedly thrown by Father during an argument with Mother.

*Id.*.

Ms. Wilbert, the occupational therapist, testified that she was to meet with J.Z. weekly for therapy to help J.Z. use her left hand more proficiently. N.T., 11/18/14, at 15-19. Ms. Wilbert testified that over a five month period, J.Z. missed eight appointments, six of which were cancellations and two of which were no-shows. *Id.* at 19. Ms. Wilbert also testified that

- 13 -

Maternal Grandmother took J.Z. to the majority of the occupational therapy appointments that J.Z. attended. *Id.* at 14-15.

Ms. Crowther, the physical therapist, testified that she was supposed to see J.Z. once a week, and J.Z. missed seven appointments since June of 2014, four of which were cancellations and three were no shows. *Id.* at 21. Ms. Crowther testified that J.Z.'s family reported to her that they had been working with J.Z. at home on skills addressed in therapy, but during therapy sessions, J.Z. was unable to follow through with exercises implemented by the therapist. Ms. Crowther reported that J.Z. regressed in her ability to walk up and down stairs, and did not progress in other areas of her physical therapy. *Id.* at 28. Ms. Crowther testified that J.Z. would have progressed in her therapy had the parents followed through with the home program and weekly visits. *Id.*

Ms. Sullivan, the caseworker, testified that Father was not to reside in the Children's home because he did not complete his FSP, and CYS had concerns with drug activity. *Id.* at 30, 34. Ms. Sullivan testified that she was contacted by Mother's probation and parole officer, who reported that Mother tested positive for Oxycontin in September and did not have a prescription. *Id.* at 30. Ms. Sullivan testified that Father nonetheless continued to live in the family's home. *Id.* at 33. Ms. Sullivan found men's clothes in Mother's bedroom. *Id.* at 35. Ms. Sullivan testified that she went to the address Father gave CYS, and a man who answered the door said

Father did not live there. *Id.* at 28. Ms. Sullivan also received reports on October 7, 2014 that Father hit J.Z. in the face with a rock. *Id.* Ms. Sullivan testified that Mother and Father had sixteen months to complete their plans, and that Mother and Father did not address the issues concerning drug and alcohol use, stable housing, and caring for the Children's medical needs. *Id.* at 36. Accordingly, Ms. Sullivan advocated for the Children's goal to be adoption. *Id.* at 37.

The trial court found the testimony of Ms. Wilbert, Ms. Crowther, and Ms. Sullivan to be credible; conversely, the trial court did not find Mother and Maternal Grandmother's testimony credible. *See* Trial Court Opinion, 1/12/15, at 9. Additionally, the trial court observed:

> Mother offered excuses, explanations, and denials for almost every [CYS] concern, including her failure to take [J.Z.] to her therapy appointments, Father residing in the home, the presence of men's clothing in the home, [M.K.]'s diaper rash, her lack of cooperation with [CYS], her positive drug screen, and finally [J.Z.]'s truthfulness.

*Id.* at 10. The trial court found that Mother and Maternal Grandmother's testimony was vague as to the dates and times of many events, and particularly regarding the frequency of Father in the home. *Id*. We defer to a trial court's determination of credibility, absent an abuse of discretion, and discern no such abuse in the trial court's finding credible the testimony of Ms. Wilbert, Ms. Crowther, and Ms. Sullivan. *See In re R.J.T.*, 9 A.3d at 1190. The evidence in this case is compelling, and supports the trial court's finding of dependency with the goal of adoption.

The trial court expressly determined that the Children's reunification with their parents is contrary to their best interest:

> [The Children] have been re-placed in the foster home that they left in June of 2014, where [A.Z.] lives. The [trial c]ourt found that [J.Z.] is very bonded to the resource parents; she calls them "Mommy" and "Daddy". Until his release from [CYS] care in June, [M.Z.] had spent his entire life in the resource home. The Children had been and are again well cared for in their resource home. Their physical and emotional needs are being met. When [J.Z.] was returned to her resource home in November 2014, she said "Hi Mom" to her resource mother and went to her bedroom, the same bedroom where she had resided for the sixteen months she was previously in care. It is in their best interest that they remain there, and that the primary goal for both children be adoption. [The] Children need love, support, permanency and stability. Mother and Father have disregarded the advice and services of [CYS] and have been generally uncooperative. Unfortunately, after sixteen months in care, it has once again become necessary to return these children into the legal and physical custody of [CYS]. To grant to parents another [Child Permanency Plan] for each child with reunification as the primary goal starts the entire process all over again. Such a result is not fair to [the C]hildren.

Trial Court Opinion, 1/12/15, at 11-12.

In *In re R.J.T.*, our Supreme Court instructed that we cannot find an abuse of the trial court's discretion where the record supports the trial court's decision regarding whether a change of goal to adoption is "best suited to the safety, protection and physical, mental and moral welfare of the child." *Id.*, 9 A.3d at 1190 (citing 42 Pa.C.S.A. § 6351(g)). Here, the record supports the change of goal to adoption. We will not disturb the trial court's credibility determinations and weighing of the evidence.

Next, Mother and Father argue that the trial court erred by accepting testimony when [CYS] failed to provide notice of [CYS] witnesses, in violation of Rule 1340(B)(1) of the Rules of Juvenile Procedure.[3] Mother and Father assert that they were denied the ability to prepare for the adjudication hearing, in violation of their Fourteenth Amendment due process rights. Further, Mother and Father assert that they were unable to

---

[3] B. Mandatory disclosure.

(1) By the county agency. In all cases, on request by a party and subject to any protective order which the county agency might obtain under this rule, the county agency shall disclose to a party, all of the following requested items or information, provided they are material to the instant case. The county agency shall, when applicable, permit a party to inspect and copy or photograph such items:

(a) the name and last known address of each witness to the occurrence that forms the basis of allegations of dependency unless disclosure is prohibited by law;

(b) the name and last known address of each witness who did not witness the occurrence but is expected to testify;

* * *

(h) the names, addresses, and curriculum vitae of any expert witness that a party intends to call at a hearing and the subject matter about which each expert witness is expected to testify, and a summary of the grounds for each opinion to be offered; and

(i) any other evidence that is material to adjudication, disposition, dispositional review, or permanency unless disclosure is prohibited by law, and is within the possession or control of the county agency;

Pa.R.J.C.P. Rule 1340.

adequately prepare for the hearing because CYS did not provide Mother and Father's attorneys with a witness list, a police report, or therapy attendance reports for J.Z. Mother's Brief at 17.

"Formal notice and an opportunity to be heard are fundamental components of due process when a person may be deprived in a legal proceeding of a liberty interest, such as physical freedom, or a parent's custody of her child." ***Everett v. Parker***, 889 A.2d 578, 580 (Pa. Super. 2005). "Both notice and an opportunity to be heard must be afforded at a meaningful time in a meaningful manner." ***Id***. (quotation marks and citation omitted); ***see also Mathews v. Eldridge***, 424 U.S. 319, 333 (1976). "Notice, in our adversarial process, ensures that each party is provided adequate opportunity to prepare and thereafter properly advocate its position, ultimately exposing all relevant factors from which the finder of fact may make an informed judgment." ***Langendorfer v. Spearman***, 797 A.2d 303, 309 (Pa. Super. 2002) (citation omitted).

We initially note that Mother and Father failed to raise their due process claims during the adjudication hearing. ***See*** Trial Court Opinion, 1/12/15, at 6 (neither parent nor their attorney objected to the failure of the Agency to provide them with a list of witnesses). "It is well settled that issues not raised at trial are waived and cannot be raised for the first time on appeal." ***In re Adoption of D.M.H.***, 682 A.2d 315, 322 (Pa. Super.

1996) (citations omitted); **see** Pa.R.A.P. 302(a). Accordingly, we find waiver.

Even if Mother and Father's due process claims were not waived, they are without merit. Mother, Father, and the Children's guardian *ad litem* were all afforded the opportunity to cross-examine CYS's witness. Mother and Father's attorneys cross-examined Officer Hatfield. The Children's guardian *ad litem* and Father's attorney cross-examined Ms. Wilbert, J.Z.'s occupational therapist. The trial court presented Mother's attorney with the opportunity to cross-examine Ms. Wilbert, but Mother's attorney declined. Ms. Crowther, J.Z.'s physical therapist, and Ms. Lazarus, the supervisor at COBYS, were cross-examined by Mother's attorney, and both the guardian *ad litem* and Father's attorney were given an opportunity to cross-examine Ms. Crowther and Ms. Lazarus, but declined to ask any further questions. Ms. Sullivan, Ms. Kohler, and Ms. Harris were cross-examined by the guardian *ad litem,* as well as Mother and Father's attorneys.

Because Mother and Father had adequate notice, an opportunity to be heard, present evidence, cross-examine witnesses, and the chance to defend themselves before a fair and impartial tribunal having jurisdiction over the dependency case, we find no violation of Mother and Father's guarantee to due process. We therefore agree with the trial court that the requisites for due process were satisfied, and that Mother and Father's claims lack merit. **See In re G.P.-R.**, 851 A.2d 967, 975 (Pa. Super. 2004) (concluding that

the father's due process rights were protected as he was represented by counsel, afforded an adjudication hearing, regular review hearings, and a hearing on his exceptions to the goal change and on the petition to terminate his parental rights, and he had the opportunity to present evidence).

Mother and Father additionally contend that the trial court erred by eliciting testimony from J.Z. without placing J.Z. under oath or soliciting testimony concerning J.Z.'s competency to testify. Mother's Brief at 21; Father's Brief at 21. Pennsylvania Rule of Civil Procedure 1915.11(b) directs, *inter alia*, that a trial court conduct *in camera* interviews with children in the presence of counsel and provides counsel "the right to interrogate the child under the supervision of the court." Pa.R.C.P. 1915.11(b). While Mother and Father now assert the trial court relied on J.Z.'s statements that were made without J.Z. taking an oath, again, they failed to raise this objection with the trial court. "It is well settled that issues not raised at trial are waived and cannot be raised for the first time on appeal." **In re Adoption of D.M.H.**, **supra**; Pa.R.A.P. 302(a). Thus, the issue is waived.

Mother and Father nonetheless argue that J.Z. was not competent to testify because she was four years old at the time of her testimony, and Maternal Grandmother and Mother's testimony was different than J.Z.'s testimony.

The law in this Commonwealth is that the court must conduct a "searching judicial inquiry" into a potential witness's mental capacity if the proposed witness is under fourteen years old. The competency investigation is to determine if the proposed witness has the: (1) capacity to observe or perceive the occurrence with a substantial degree of accuracy; (2) ability to remember the event which was observed or perceived; (3) ability to understand questions and to communicate intelligent answers about the occurrence, and (4) consciousness of the duty to speak the truth. However, [b]ecause a trial judge has a superior opportunity to assess the competency of a witness, an appellate court should virtually never reverse a competency ruling. Thus, the determination of a witness's competency to testify will not be disturbed on appeal absent a clear abuse of discretion.

*In Interest of C.L.*, 634, 648 A.2d 799, 800-01 (Pa. Super. 1994) (citations omitted) (quotations omitted). Again, Mother and Father did not object at the adjudication hearing. "It is well settled that issues not raised at trial are waived and cannot be raised for the first time on appeal." *In re Adoption of D.M.H., supra;* Pa.R.A.P. 302(a).

Even if this issue was not waived, it is without merit. The trial court explained:

J.Z. was approximately four and one half years of age at the time of the hearing. As with all children, the [trial c]ourt was not sure what, if any, information she could provide. However, after listening and observing her respond to questions, the [trial court] was satisfied that she had the cognitive ability and mental capacity to remember and relate her observations as to whom resided in the home and what was going on in the household. While she appeared anxious and guarded, and did not answer some questions, her observations and the information she relayed, and the manner in which she relayed it, was what you would expect from a child her age. For the most part, she responded appropriately to questions and provided information about basic daily life while in her Mother's home, Father's presence in the home, and the role that her grandmother and great grandmother played in her life. The [trial court] found

[J.Z.] to be credible and the information reliable. She confirmed her statements made to the caseworker, the statements made by Mother and Father to the police, and corroborated what the neighbors told the police about Father's presence in the home.

The [trial court] did not find it necessary that the child be sworn in, given her age and the nature of the information provided. No objection was raised at the time of the hearing by the attorneys representing Mother and Father, who were present in chambers at the time that J.Z.'s testimony was taken and had the opportunity to question the child. Furthermore, this [trial court] did not feel, under the circumstances as presented, the need to question J.Z. to determine if she knew the difference between telling the truth and lying.

Trial Court Opinion, 1/12/15, at 7-8. The trial court, not the appellate court, bears the responsibility of evaluating the credibility of the witnesses and resolving any conflicts in the testimony. *In re R.J.T.*, *supra*. As those determinations are well-supported by the record, we would find that Mother and Father's claim regarding J.Z.'s testimony is without merit.

Finally, Mother and Father have asserted that the trial court erred by failing to hold the adjudication hearing within ten days of the shelter care hearing, in violation of Rule 1404 of the Rules of Juvenile Procedure.[4] While Mother and Father now claim the trial court erred by failing to hold the

---

[4] Rule 1404. Prompt Adjudicatory Hearing

A. Child in custody. If a child has been removed from the home, an adjudicatory hearing shall be held within ten days of the filing of the petition.

B. Child not in custody. If a child has not been removed from the home, the adjudicatory hearing shall be held as soon as practical but within forty-five days of the filing of the petition.

Pa.R.J.C.P. 1404.

adjudication hearing within ten days of the shelter care hearing, they failed to raise this objection in the trial court, once more effecting waiver. "It is well settled that issues not raised at trial are waived and cannot be raised for the first time on appeal." *In re Adoption of D.M.H.*, *supra*; Pa.R.A.P. 302(a).

Even if this issue was not waived, we agree with the trial court's assessment. The Children were placed in foster care on November 4, 2014. The shelter care hearing was held on November 5, 2014, and the adjudication hearing was held on November 18, 2014. The trial court explained the brief delay:

> [B]oth parents were represented by court appointed counsel at the time of the initial Shelter Care hearing and at the time of the Adjudication Disposition hearing. November 18, 2014 was the first court date when the parents' long standing appointed attorneys and guardian, and this Judge, who has been handling this family since 2012, were available.

Trial Court Opinion, 1/12/15, at 6.

Given the foregoing, we discern no abuse of discretion by the trial court, and therefore affirm the orders.

Orders affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/27/2015

- 23 -