J. S53032/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

IN RE:  C.S., A MINOR            :        IN THE SUPERIOR COURT OF
                                       :             PENNSYLVANIA
                                       :
APPEAL OF:  J.R.B. AND B.J.B.    :        No. 1401 EDA 2017

Appeal from the Decree, April 25, 2017,
in the Court of Common Pleas of Northampton County
Domestic Relations Division at No. A2014-0002b

BEFORE:  BENDER, P.J.E., OLSON, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED JANUARY 30, 2018**

J.R.B and B.J.B. ("appellants") appeal from the decree entered April 25, 2017, in the Court of Common Pleas of Northampton County by the Honorable Craig A. Daily, vacating the adoption decree dated March 29, 2017, denying appellants' petition for the adoption of C.S. ("the Child"), a female born in July of 2009, and granting the adoption petition of A.S., the Child's maternal aunt.[1]  After careful review, we affirm.

By way of background, the Child is the natural child of R.F. ("Mother") and E.S. ("Father").  Mother struggled with drug addiction, and in anticipation of being remanded to prison, Mother placed the Child with

---

[1] A.S. is Mother's first cousin, and the adoptive mother of C.S.'s full-blooded younger twin sisters, O.S. and G.S. (the "Twins").  The Twins were placed with A.S. on August 2, 2012, when they were seven weeks old.

appellants on September 6, 2012.[2]  Upon Mother's release from prison, the Child returned to Mother's care but was once again voluntarily placed by Mother with appellants on April 30, 2013, in anticipation of entering inpatient drug rehabilitation.  Mother was released from treatment on or about May 30, 2013, and died of a drug overdose on May 31, 2013.

From the time of the Child's birth through the time of Mother's entry into drug rehabilitation in April of 2013, A.S. had regular and routine contact with Mother and the Child.  The Child was adjudicated dependent in 2013, and Northampton County Children, Youth, and Families Division ("CYF") assumed custody of the Child.  CYF continued the Child's placement with appellants, and A.S. exercised weekend and holiday visits with the Child through December 2014, which limited A.S.'s ability to perform parental duties for the Child.  In 2013, A.S. and other maternal family members regularly had unsupervised weekend visits with the Child.

CYF ceased all contact between the Child and her maternal family, including A.S., from the end of December 2014, following a Christmas visit, until July 2015, when visits between A.S. and the Child were supervised by CYF.  Supervised visits continued through May 2016, and they were limited to two-hour visits every two weeks.  On or about May 20, 2016, maternal

---

[2] Appellants are the adoptive parents of a daughter, G.B., age 9, and house their niece, K.C., age 13.

family, including A.S., were once again permitted unsupervised weekend visits with the Child.

Father was incarcerated until January of 2015. During his incarceration, Father engaged with the Child via Skype, and participated, via telephone, with all juvenile court proceedings. Father participated with services to the best of his ability, while complying with the terms of his probation. On May 26, 2015, Father executed a "Consent for Adoption by Father of Child." On June 24, 2015, CYF filed a petition to confirm consent. A hearing on the petition was held on July 28, 2015, at which time Father indicated he wished to revoke his consent. On August 17, 2015, the trial court entered a final decree, dated August 11, 2015, terminating Father's parental rights to the Child. Father did not appeal the termination of his parental rights.

Appellants filed an adoption petition on December 30, 2016. A.S. filed a competing adoption petition on January 5, 2016. On March 29, 2017, the trial court entered an adoption decree granting A.S.'s adoption petition, and denying appellants' adoption decree. On April 25, 2017, the trial entered a second decree, vacating its March 29, 2017 decree, in order to procedurally address the Child's adoption subsidy payment, and re-entered the adoption decree in A.S.' favor.

On April 28, 2017, appellants timely filed this notice of appeal, together with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), with regards to the decree.

On appeal, appellants raise three issues, as follow:

I.      Did the trial court commit an error of law and abuse its discretion in this contested adoption matter by failing to consider and finding to be relevant and pertinent all pleadings and testimony regarding the best interests of the Child in question including the placement of the Child with the appellants for [three and one-half] years prior thereto[?]

II.     Did the trial court commit an error of law and abuse its discretion in this contested adoption matter by failing to consider and apply appropriate weight to the persuasive testimony of the two (2) expert witnesses who presented testimony at time of trial as to the best interests of the Child in question[?]

III.    Did the trial court committed an error of law and abuse its discretion in this contested adoption matter by not placing appropriate weight on the findings and reports of the guardian ad litem and the caseworkers and agents of [CYF] as to the best interests of the Child in question[?]

Appellants' brief at 6 (capitalization omitted).

Once parental rights have been terminated, anyone may become an adoptive parent, and the best interest of the child is the controlling factor by which a court must be guided. *In re Adoption of D.M.H.*, 682 A.2d 315 (Pa.Super. 1996). In an adoption proceeding, a trial court must base its

conclusions upon all relevant information discerned with the full participation of all interested parties. *Id.*

This court has the broadest discretion in reviewing appeals from adoption decrees:

> [A]ppellate review of child custody Orders is of the broadest type, *McMillen v. McMillen*, 529 Pa. 198, 602 A.2d 845 (1992), and we may modify the trial court's custody determination where it is shown by evidence of record to be manifestly unreasonable, *In re: David L.C.*, 376 Pa.Super. 615, 546 A.2d 694 (1988); see also *Robinson v. Robinson*, 538 Pa. 52, 645 A.2d 836 (1994) (appella[te] interference warranted where custody Order is manifestly unreasonable). Further, our review is not bound by the trial court's deductions, inferences and interpretations of evidence and we will exercise independent judgment to consider the merits of the case and to enter an Order that is correct and just. *Bucci v. Bucci*, 351 Pa.Super. 457, 506 A.2d 438 (1986).

*In re Adoption of D.M.H.*, 682 A.2d 315, 318 (Pa.Super. 1996), quoting *In Interest of G.C.*, 673 A.2d 932, 943 (Pa.Super. 1996) (*en banc*).

The proceedings in an adoption hearing are unique and involve parties, experts, investigators, and non-parties to a greater extent than in custody hearings, but ultimately are subject to the same standard, "that being the best interest of the child." *In re B.L.L.*, 787 A.2d at 1015, citing *In re Adoption of A.S.H.*, 674 A.2d 698 (Pa.Super. 1996).

As all of appellants' issues arise out of the question of whether the trial court considered the best interest of the Child, as defined by the Child Custody Act, 23 Pa.C.S. § 5328, we will address them together.

Section 5328(a) of the Act provides as follows:

**§ 5328.  Factors to consider when awarding custody**

**(a)  Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1)  Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2)  The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1)  The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3)  The parental duties performed by each party on behalf of the child.

(4)  The need for stability and continuity in the child's education, family life and community life.

(5)  The availability of extended family.

(6)  The child's sibling relationships.

(7)     The well-reasoned preference of the child, based on the child's maturity and judgment.

(8)     The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9)     Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10)    Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11)    The proximity of the residences of the parties.

(12)    Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13)    The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14)    The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a)(1-16).

Citing **A.S.H.**, appellants argue the trial court's paramount concern in both custody and adoption matters is the best interest of the child. **In re Adoption of A.S.H.**, 674 A.2d 698, 700 (Pa.Super. 1996). (Appellants' brief at 10.) Appellants argue that, while A.S. is a blood relative to the Child and the appellants are not, A.S. is not the parent of the Child, and as such, the burden of proof should be allocated equally between appellants and A.S. (**Id.** at 12).

We are mindful that, when possible, the preservation of the family is the desired outcome in custody matters. However, "[t]he goal of preserving the family unit cannot be elevated above all other factors when considering the best interests of the children, but must be weighed in conjunction with other factors." **In re Adoption of G.R.L.**, 26 A.3d 1124, 1127 (Pa.Super.2011) (citation omitted).

Additionally, the Orphans' Court has the duty to consider the statements and opinions of the guardian **ad litem** when making its determination of which family would better serve the bests interests of the child. **Adoption of D.M.H.**, 682 A.2d 315, 322 (Pa.Super. 1996).

Instantly, the trial court issued its Pa.R.A.P. 1925(a) opinion on May 1, 2017, and stated that the reasons of the trial court can be found in its March 29, 2017 order, in which it considered all of the Section 5328(a) best interest factors, and its April 25, 2017 adoption decree. (**See** trial court opinion, 5/1/17.)

A review of the trial court's March 29, 2017 order reveals that the trial court performed a detailed analysis of the Section 5328(a) factors. (Trial court order, 3/29/17 at 6-24.) The trial court concluded that it is in the Child's best interest to be adopted by A.S. (**Id.** at 28.)

When considering Section 5328(a)(1), the trial court concluded:

> The [c]ourt is satisfied that both parties are cognizant of the importance of the child maintaining ties with the other, and with extended family members on both sides. Moreover, their ability to work together to date to ensure visits in accordance with [CYF's] instructions, coupled with their willingness to offer one another Act 101 Agreements, demonstrates that the parties are interested in ensuring ongoing contact between the child and the other party.
>
> Finally, while [appellants] make much of the fact that their Act 101 agreement offers [A.S.] more contact that the agreement she offers, the [c]ourt is not convinced that a greater amount of contact with the non-adoptive party is necessarily in the [C]hild's best interests. Specifically, while the [c]ourt believes that the adoptive party may need to be flexible and willing to adjust visitation schedules to meet the needs of the [C]hild, it is ultimately in the [C]hild's best interest to be well established in the care and custody of the adoptive party, and that may be best accomplished by regular, but not overly-frequent contact with the non-adoptive party.

Moreover, despite [CYF's] position permitting contact between the [C]hild and [Father] under the supervision of [appellants], and the endorsement of the same by permanency caseworker, Jose "Alex" Carrillo, who offered no testimony that he has ever observed the [C]hild with [Father], the [c]ourt is not convinced that it is in the [C]hild's best interests that she visit or be exposed to him, or a number of the people with whom [appellants] maintain ties. Nor is the [c]ourt convinced that leaving such contact to the judgment and supervision of [appellants] is in the best interests of the [C]hild. In the [c]ourt's view, the questionable influence of the individuals that the [C]hild is exposed to by [appellants] presents a safety issue, and as such, the [c]ourt accords greater weight to this factor, pursuant to 23 Pa.C.S.A. § 5328(a). However, in so doing, the [c]ourt notes that the record is devoid of testimony that the [C]hild has been placed in harms' [sic] way by contact with these individuals, and the weight accorded is tempered by that fact.

*Id.* at 9-10 (internal citations and footnote omitted).

The trial court considered, pursuant to Section 5328(a)(2) and (a)(2.1), whether there has been past or present abuse committed by a party, or a member of the party's household, whether there is a continued risk of harm to the child or an abused party, and which party can better provide physical safeguards and supervision of the child. The trial court stated:

In this case, no evidence was presented regarding abuse of the [C]hild, or any abuse committed by any party or member of their household. However, we note that [J.R.B.] has been arrested five times, and the two most recent arrests, in 2005 and 2006, relate to Simple Assault charges. The 2005 charges were withdrawn, and the 2006 charges, which arose from an incident with [B.R.B.'s] adult son, who was

- 10 -

also charged, resulted in a guilty plea. By contrast, [A.S.] has no arrest record, and presents as a calm and peaceful individual.

*Id.* at 11.

Next the trial court examined the performance of parental duties by each party on behalf of the child pursuant to Section 5328(a)(3). The trial court considered the testimony of A.S., as well as the testimony of B.J.B. in concluding:

> [T]he [c]ourt is satisfied that to date, [appellants] have successfully provided for the [C]hild's daily needs, performing all necessary activities of daily living with and/or for the [C]hild as necessary, and providing her love and support. Likewise, the [c]ourt is satisfied that A.S. has done the same for the [C]hild during her custodial periods. However, as previously noted, the [c]ourt has concerns that [appellants] may fail to recognize situations that may not be in the best interests of the [C]hild, and they may be ill-equipped to protect her from exposure to potentially harmful or otherwise inappropriate circumstances.

*Id.* at 12.

Turning to Section 5328(a)(4), the trial court considered the stability and continuity of the Child's education, family, and community life. The trial court noted:

> [T]he [C]hild, who is presently seven (7) years old, has been residing continually in [appellants'] home for the last three and one-half (3 ½) years, and she is closely bonded with [appellants], and with her nine year-old half-sister, G.B. She is a second grader at Washington Elementary School in Bangor, Pennsylvania. She is a cheerleader for the Bangor Slaters, but is not otherwise engaged in any

community activities. [The Child] has had a lifelong bond with [A.S.], and she has siblings in both homes. The [C]hild's own testimony indicates that she is bonded to all of these siblings and that she enjoys the time she spends in both homes. While the grant of [A.S.'] adoption petition would require that the [C]hild change communities and schools, the [c]ourt finds that given the child's young age, her limited involvement in activities, and the promise of continuing contact with G.B. and [appellants], the challenges that would be presented by such a change are not so insurmountable as to weigh against [A.S.'] petition.

*Id.* at 12 (internal citations omitted).

The trial court's analysis of Section 5328(a)(5), the availability of extended family, is as follows:

The [C]hild is deeply loved by family members associated with both parties. She has a strong bond to [appellants] and . . . G.B., and she has close associations to their other family members. She also has a close bond to [A.S.], [the Twins], and all of her maternal family members, including her two older brothers. Through [appellants], the [C]hild also has contact with [Father] . . . . While [CYF] does not preclude this contact, the [c]ourt does not believe that it is in the [C]hild's best interests.

. . . .

Consequently, the [C]hild has a great number of people who are interested in her well-being. However, [A.S.'] status as a blood relative and her familial connection to a greater number of the [C]hild's blood relatives, which includes her older brothers and family interested in and involved with her . . . causes the [c]ourt to weigh this factor in favor of [A.S.] It should be noted however, that the weight of this factor is tempered by each party's willingness to execute Act 101 agreements in favor of the other party.

*Id.* at 12-13.

Examining the Child's relationship with her siblings, pursuant to Section 5328(a)(5), the trial court found:

> The [C]hild has two full-blooded siblings, [the Twins], who are the adoptive children of [A.S.,] G.B., who is the adoptive daughter of [appellants], is the natural child of Father, and [the Child's] half-sibling. [The Child] also has two half-brothers, who are the natural children of Mother. . . .
>
> There was considerable testimony offered during trial with respect to the fact that [A.S.] has not fostered a relationship between her daughters [the Twins], with their half-sister, G.B.[,] and the distress this has caused [the Child.] If the Court were to grant [A.S.'] adoption petition, it would clearly be in the best interests of the [C]hild to maintain her relationship with G.B., and if the [c]ourt were to grant [appellants'] petition, it would be in the best interests of the [C]hild to maintain a relationship with [the Twins] and the rest of her maternal family. In this regard, the [c]ourt is satisfied that the Act 101 Agreements offered by the parties are sufficient to foster the familial bonds between the sisters. However, the [c]ourt notes that the grant of [A.S.'] adoption petition would also afford the [C]hild a full opportunity to rebuild a bond with her half-brothers, with whom [appellants] have no contact. The [C]hild has a half-brother who is in the primary care of his paternal grandmother, and in the care of the children's maternal grandmother every other weekend, and the [C]hild has another half-brother, who has previously been in the care of maternal grandmother, but was in a residential placement to address behavioral issues at the time of trial, and has remained connected to his maternal family since Mother's passing. In the absence of any countervailing concerns, the [c]ourt believes that fostering the [C]hild's consanguineous relationships,

or her blood ties, is paramount to her longterm [sic] welfare.

*Id.* at 12-14 (internal citations omitted).

Next, the trial court turned to Section 5328(a)(6), the Child's preference, and concluded:

> The [C]hild has been in [appellants'] home for approximately half her lifetime to date, she feels loved and supported there, and she is comfortable in that situation. Notably, however, the [C]hild clearly feels loved, comfortable, and safe in the homes of both parties, and she is bonded in both homes. While the [c]ourt believes that a change in her living arrangements attendant with an adoption would be a major adjustment, the [c]ourt is satisfied that given her young age, her ability to articulate her feelings, and the promise of continuing contact with all parties, the [C]hild could make the adjustment successfully.

*Id.* at 16.

The trial court examined whether there was any attempt by one party to turn the Child against the other, pursuant to Section 5328(a)(7). The trial court noted:

> Given that the [c]ourt is ruling on competing adoption petitions and not deciding custody as between parents, the relationship between the parties is not as critical. However, because the [c]ourt believes that it is in the [C]hild's best interests to maintain contact with the family that is not permitted to adopt, it is important that the parties are able to get along sufficiently to honor and effectuate an Act 101 agreement, and during the testimony of both parties, they indicated that they are so prepared. Upon consideration, the [c]ourt finds the testimony credible.

*Id.* at 17.

Section 5328(a)(9) requires that the trial court consider the Child's emotional needs to determine which party is more likely to maintain a loving, stable, consistent, and nurturing relationship with the Child, adequate for the Child's emotional needs. The trial court acknowledged that the Child has experienced significant trauma in her life, and opined:

> While [appellants] are unquestionably loving toward the [C]hild, and they do their best to care for her, the [c]ourt is concerned that [B.J.B.] in particular, as the primary caregiver, is ill-equipped to make decisions contrary to what she believes the [C]hild's wishes, when required to assure her best interests. Further, the [c]ourt is concerned that [appellants] may not be equipped to identify and address the [C]hild's emotional needs in a timely and effective manner.

*Id.* at 18.

The trial court then considered the daily needs of the Child, pursuant to Section 5328(a)(10) to determine "which party is more likely to attend to the daily physical, emotional, developmental, educational, and special needs of the Child." 23 Pa.C.S.A. §5328(a)(10). After considering the evidence presented, the trial court concluded:

> To date, [appellants] have provided satisfactory care for the [C]hild. However, the [c]ourt is concerned about their somewhat lackadaisical attitude toward addressing the death of the [C]hild's mother and the resulting trauma to her. The [c]ourt also has concerns about the ability of [appellants] to put the needs of the [C]hild above the wishes of the [C]hild when it is necessary to do so.

> It was also noted at trial that [B.J.B.] has some learning difficulties and is sometimes unable to help the [C]hild with her homework. While this, in and of itself is not a concern, the [c]ourt's concern regarding [appellants'] judgment and [B.J.B.'s] own expressed tendency to cater to the wishes of the children in her home give the [c]ourt pause as to whether [appellants] are sufficiently equipped to identify the [C]hild's need for additional supports and to initiate and facilitate the [C]hild's access to the same as necessary.
>
> By contrast, [A.S.] appears, by virtue of what appears to be a very deliberate and attentive nature, more than adequately motivated and capable of identifying the [C]hild's needs and ensuring the timely provision of appropriate supports

Trial court order, 3/29/17 at 18-19.

Noting that Section 5328(a)(11) has limited application in this matter, the trial court nevertheless considered the proximity of residences of the parties. The trial court stated it "has no concerns that the proximity of the parties' residences will impinge in any way on the custodial care of the [C]hild in the long run." (*Id.* at 19.)

Reviewing Section 5328(a)(12) for each party's ability to care for the Child, or make appropriate child-care arrangements, the trial court again stated that it "has no concerns in this regard," as neither party alleges that the other is unable to provide child-care. (*Id.*)

Next, the trial court gave limited weight to Section 5328(a)(13), which directs the trial court to evaluate the level of conflict between the parties

because this is an adoption matter, not a custody matter. The trial court found:

> it is in the best interests of the [C]hild that there be an Act 101 agreement in place, it is essential that the parties be able to work together to see that through. Given their current practice, the [c]ourt is satisfied in this regard.

*Id.* at 20.

Section 5328(a)(14) requires the trial court to consider "the history of drug or alcohol abuse of a party or member of a party's household." Pa.C.S.A. § 5328(a)(14). The trial court noted that there were no allegations of drug or alcohol abuse by any party, or member of a party's household, that both parties have family members in recovery, and that appellants have a family member in early recovery living next door. The trial court stated:

> [w]hile this fact does not bear on the [c]ourt's determination, because both parties will continue to have contact with the [C]hild after the [c]ourt's ruling on the adoption petitions, they are reminded to be vigilant in protecting the [C]hild from exposure to situations where an individual's substance use could put her in harm's way.

Trial court order, 3/29/17 at 20-21.

Next, the trial court considered the mental and physical conditions of the parties and any members of their household pursuant to Section 5328(a)(15). The trial court determined that while appellants have health issues, it did not "believe that their health issues, which are controlled

by physician-prescribed medication, are of any consequence to the [c]ourt's determination in this case." (**Id.** at 21.)

Finally, Section 5328(a)(16) requires the trial court to consider "any other factor." Pa.C.S.A. §5328(a)(16). In its evaluation of the Child's best interest, the trial court considered the opinion of the Child's guardian **ad litem** ("GAL"). The trial court concluded:

> Pursuant to Rule 1154, it is a Guardian Ad Litem's obligation to fully evaluate the factors affecting the best interests of the [C]hild, not to simply follow the path dictated for the child by the Agency. In this case, it is apparent from the record that the GAL did not fully exhaust his investigative duties under subsections (4) and (5) of the Rule, failing to investigate [A.S.] or any other interested party as an adoptive resource for the [C]hild, choosing instead to limit the scope of his involvement in this matter to an endorsement of [appellants] as [CYF's] chosen adoptive resource from early on in this case. With this in mind, the [c]ourt accords less weight to the GAL's recommendation that it would had he engaged in a complete and thorough undertaking of his duties.
>
> While the Court recognizes [appellants'] efforts to provide a caring, loving environment for the [C]hild, it acknowledges that they are prepared to allow [A.S.] more post-adoption contact than she is prepared to offer them, and it further acknowledges that the grant of [A.S.'] adoption petition would signal a large and impactful change in the [C]hild's life, the [c]ourt is confident that the award of [A.S.'] adoption petition is soundly in the [C]hild's best interests.

Trial court order, 3/29/17 at 23-24.

After considering all of the best interest factors pursuant to Section 5328(a), the trial court ultimately concluded:

6. Since the inception of the [C]hild's dependency, she has never been placed with [A.S.]

7. Accordingly, [A.S.] is unable to satisfy the foregoing requirements of the Adoption Act.

8. 23 Pa.C.S.A. § 2901, and case law interpreting the same, establish that the failure to satisfy certain requirements of the Adoption Act are not fatal to a petition.

9. As set forth **supra**, § 2901 provides for judicial waiver of the requirements of the Adoption Act for 'cause shown.' 23 Pa. C.S.A. § 2901.

10. Case law provides that "there is no reasonable construction of the Section 2901 'cause shown' language other than to conclude that it permits a petition[er] to demonstrate why, in a particular case, he or she cannot meet the statutory requirements. Upon a showing of cause, the trial court is afforded **discretion** to determine whether the adoption petition should, nevertheless, be granted." **In re: Adoption of R.B.F**., 569 Pa. 269, 280, 803 A.2d 1195, 1202 (Pa. 2002).

11. In this case, the [c]ourt is satisfied that [A.S.] has shown sufficient cause for her inability to satisfy the foregoing requirements of the Adoption Act, and she has further demonstrated notwithstanding the technical deficiencies of her petition, it is in the best interests of [the Child] that she be adopted by [A.S.]

12. It is in the best interests of the [C]hild that her ties to her blood relatives be maintained and fostered.

13.  It is in the best interests of the [C]hild that her connection with [appellants] and with her half[-]sister[,] G.B.[,] be maintained and fostered.

14.  It is in the best interests of the [C]hild that she be adopted by [A.S.] and that she maintain contact with [appellants] and G.B. pursuant to the Act 101 agreement offered by [A.S.] and presented to the Court as Exhibit B-2.

15.  Weekend visitation with [appellants] twice per month in the first three months and once a month thereafter will help the [C]hild to acclimate to the change in her family structure, and allow her to establish firm roots in [A.S.'] family.

Trial court order, 3/29/17 at 27-28.

We find that the competent evidence in the record supports the trial court's conclusion that it is in the Child's best interest that she be adopted by A.S. The trial court heard testimony from Richard Small, Ph.D., ABPP, who performed a forensic bonding assessment to evaluate bonds between the Child, appellants, A.S., as well as G.B., and the Twins. (*Id.* at 7.) When considering Dr. Small's testimony, the trial court noted that Dr. Small spent limited time with the parties, and did not accord great weight to Dr. Small's findings. (*Id.*)

The trial court also heard testimony from Rutvi Kapadia, Psy.D., LPC, NCC, who performed a trauma assessment to determine the impact of the Child's being removed from appellants' home. (*Id.*) Dr. Kapadia did not interview the Child or either of the parties together, and the trial court

surmises that while Dr. Kapadia may not have found it necessary to do so, the lack of such interviews goes to the weight to be given to her report. (***Id.*** at 8.)

Based on the foregoing, we will not disturb the adoption decree. The trial court's determination that it would be in the Child's best interest to grant A.S. the right to adopt her is supported by the record. Accordingly, we affirm the decree.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/29/17